## FRANQUIZ v. AUTOMOBILE INS. CO.

(District Court, S. D. Florida.  July 30, 1923.)

### No. 814.

**Insurance ⬦415—Vessel held not "seaworthy" at commencement of voyage within warranty in marine policy.**

Where, at the commencement of a voyage, a flat bottomed vessel leaked about four inches of water per hour, requiring pumping four times a day for 1½ hours each time, and both pumping engines broke down when she had proceeded but a short distance, though the weather was fair and the sea calm, *held*, that she was not "seaworthy" when the voyage commenced, within the warranty by the assured in a marine policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaworthy—Seaworthiness.]

In Admiralty.  Suit by Jose Franquiz, doing business as Jose Franquiz & Co., against the Automobile Insurance Company.  Decree for respondent.

Kelly & Sutton, of Tampa, Fla., for libelant.

E. J. L'Engle and W. F. Rogers, both of Jacksonville, Fla., and Bigham, Engler & Jones, of New York City, for respondent.

CALL, District Judge.  Libel was filed in this case to recover on an insurance policy by respondent, on the schooner John Francis, then lying in St. Francis Bay, loading with yellow pine lumber for the port of Arecibo, Mexico, as and for a total loss.

The facts appearing from the testimony are that on May 22, 1919, said vessel left St. Andrews with a full cargo of yellow pine lumber, hold and deck, bound on her voyage; when four days out the gasoline engines (two), intended to work her pumps, broke down, and the master and mate, deciding that it was unsafe to proceed on her voyage in this condition, made for the port of Tampa; and on the afternoon of May 30th, went aground on the outer bar of said port.  It is undisputed in the evidence that since leaving St. Andrews Bay to the time of the grounding, the vessel had encountered no heavy weather; that while lying in St. Andrews Bay the vessel leaked about four inches of water per hour; that it required pumping four times a day of about 1½ hours each, to keep the vessel clear of water.  The policy provides as follows:

"Warranted by the assured seaworthy at her departure on the present voyage, and at the commencement of each passage during the continuance of this policy."

The first question to be decided is:  Was the vessel seaworthy at the time she broke ground for the voyage?  If this question is decided in the negative, then it is not necessary to examine the other issues made by the pleadings.

There is no explanation of the cause of the breaking down of the two gasoline engines offered in the testimony.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It is not incumbent upon libelant to prove his vessel seaworthy, but it is incumbent upon him, when the fact appears that machinery, necessary to make the vessel seaworthy, breaks down, to offer some explanation to rebut the presumption of fact which arises in the mind that the machinery, which breaks down when not exposed to some extraordinary strain in so short a time from the commencement of the voyage, must have been defective at its commencement. It will be borne in mind that the weather was clear, smooth sea, and that no heavy weather had been encountered prior to the breaking down of the two engines. These facts are significant to my mind that the vessel was not seaworthy when the voyage commenced. Again, can a wooden vessel making water at the rate of four inches an hour be said to be seaworthy? This vessel was of the type known as flat bottomed, as distinguished from the round bottomed type. Four inches of water in such a type of bottom would necessarily be much more in quantity than in a round bottomed type. Of course, it is to be expected that all wooden vessels will leak some, and pumps are provided upon all vessels to care for this leakage. But it strikes me that leaks to the extent of four inches to the hour, requiring the use of the pumps four times a day, for periods of 1½ hours, are very extraordinary and irresistibly leads to the conclusion that such vessel is unseaworthy.

I am of opinion, therefore, that the John Francis was "unseaworthy" when she broke ground for the voyage, and that warrant of seaworthiness was violated; and that the libelant cannot recover in this proceeding.

A decree will be entered dismissing the libel at the cost of libelant.